314 So.2d 634 (1975)
Harlan A. BLACKBURN, Appellant,
v.
STATE of Florida, Appellee.
No. 74-117.
District Court of Appeal of Florida, Fourth District.
May 23, 1975.
Rehearing Denied July 18, 1975.
*635 J. Cheney Mason, Orlando, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and C. Marie Bernard, Asst. Atty. Gen., West Palm Beach, for appellee.
BROWN, CECIL H., Associate Judge.
Appellant, Harlan A. Blackburn, appeals a judgment and conviction in the lower court for the crime of assault with intent to commit murder in the first degree.
The prosecution in this case was commenced on June 5, 1973, by the filing of a two count information in the lower court. Count I charged appellant and one Sam *636 Cagnina with the crime of assault with intent to commit murder in the first degree, for which appellant was convicted and sentenced; Count II charged both defendants with conspiracy to commit the same offense. The prosecution resulted from a shooting which the record reflects occurred on the 11th day of June, 1971, at which time the state's principal witness, one Clyde Lee, was fired upon by an assailant identified by him as Sam Cagnina. In essence, the witness Lee testified that on the morning of June 11, 1971, he talked to the appellant by telephone and stated that appellant instructed him to go to the "little glass building (a phone booth) to return a telephone call to the appellant. Lee further testified that while he was talking to the appellant over the phone from the booth, a car drove up and Sam Cagnina got out with a gun and started shooting at him. Lee was also permitted to testify, over objection of counsel for appellant, about an incident which occurred on March 19, 1971, the essence of which was that pursuant to another phone call between himself and appellant, that he (Lee) met appellant behind an apartment project in Seminole County and was introduced to a man known as "Pete's son." Shortly thereafter appellant left with stated intentions of returning in about five minutes, which he did not do. The said "Pete's son" stayed and after a conversation of thirty-five or so minutes thereupon pulled a gun and commenced shooting at Lee. "Pete's son" was later identified by Lee as Cagnina.
The evidence does not reveal appellant was anywhere near the scene of the alleged shooting at the time thereof on either of these occasions.
A severance was granted and the co-defendant Cagnina was tried and acquitted prior to the commencement of the trial of appellant. Count II, charging conspiracy, was dismissed shortly before the trial began. It was a long and tedious trial for the lower court. It commenced on the morning of January 7, 1974 and ended on the morning of January 11 at 11:00 A.M., at which time appellant was sentenced to Division of Corrections for a period of from six months to ten years.
The bill of particulars filed in this case states that appellant "... was charged as an aidor [sic] and abettor of the alleged offense." Presumably defendant was charged under Section 776.011 of the Florida Statutes, which reads as follows:
"776.011 Principal in first degree  Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, is a principal in the first degree and may be charged, convicted and punished as such, whether he is or is not actually or constructively present at the commission of such offense." (Emphasis added.)
To facilitate a full understanding of the position of the appellant we will revert to the use of some terms which apparently have become obsolete by the enactment of § 776.011 aforesaid. The predecessors of that section were § 776.01 and § 776.02 of the Florida Statutes, which before repeal read as follows:
"776.01 Accessory before the fact  Whoever aids in the commission of a felony or is accessory thereto, before the fact, by counseling, hiring, or otherwise procuring such felony to be committed, shall be punished in the same manner prescribed for the punishment of the principal felon." (Emphasis added.)
"776.02 Indictment and punishment  Whoever counsels, hires or otherwise procures a felony to be committed, may be indicted and convicted as an accessory before the fact, either with the principal felon or after his conviction, or may be indicted and convicted of substantive felony, whether the principal has or has not been convicted or is or is not amenable *637 to justice; and in the last mentioned case may be punished in the same manner as if convicted of being an accessory before the fact." (Emphasis added.)
Thus the terms "principal in the second degree" and "accessory before the fact" appear to have passed into the judicial history of the State of Florida. We now have only principals in the first degree. Newman v. State, 196 So.2d 897 (Fla. 1967); State v. Roby, 246 So.2d 566 (Fla. 1971); and Jacobs v. State, 184 So.2d 711 (Fla.App. 1966). In any event, it appears from the record that Sam Cagnina was charged as what we know to be a principal in the first degree, and that appellant was likewise charged with the same substantive offense. The bill of particulars simply characterized the nature of the proof to be offered. The evidence actually offered pointed toward what was previously known to be "an accessory before the fact." The difference at that time in the respective offenses is explained in the case of Neumann v. State, 116 Fla. 98, 156 So. 237 (1934), as follows:
"An accessory before the fact is one who is absent at the time of the commission of a felony, but who has beforehand counseled, hired, or otherwise procured the perpetrator to commit it as defined in section 7110, C.G.L., section 5008, R.G.S. A principal in the second degree is one who "aids in the commission of a felony" as referred to in section 7110 C.G.L., supra, by being present, aiding and abetting the commission of the felony at the time it is perpetrated. The latter's presence at the time of commission of the crime may be actual or constructive. Kauz v. State, 98 Fla. 687, 124 So. 177; Albritton v. State, 32 Fla. 358, 13 So. 955."
Appellant has supported by appropriate assignments of error ten points. Excellent and extensive briefs have been filed and most elucidating argument presented by both parties. For this reason, we will discuss the points in the declining order of their merit, if any.
Points I and II assail the sufficiency of the evidence in one respect or another. Appellant asserts the failure to establish a prior conviction of Cagnina by competent record evidence is fatal to the state's case here. This contention is rejected. As far back as 1934, the supreme court in Neumann, supra, held that an "accessory before the fact," if charged with the substantive offense, under the then existing statute (i.e., § 7111 C.G.L. being the predecessor of said Section 776.02, Florida Statutes), could be tried and sentenced without regard to the principal offender. That case was involved. The question was determined if the defendant there had been charged as a principal or as an accessory before the fact and the additional question of whether or not the said charge was made under the then existing common law or under the sections of the statutes aforesaid. In its explanation, the supreme court said:
"... [B]ecause of the clear distinction which is preserved in the common law and by our statutes between principals and accessories, it is essential that, in charging one as an accessory before the fact, the distinction between principals and accessories be preserved in the manner of stating the charge. This is so, because one charged as an accessory before the fact to a felony cannot, unless charged with a substantive offense under the statute, be tried before the principal offender is tried; nor can he be sentenced before the principal has been sentenced... ."
* * * * * *
"On the other hand, a principal in the first degree and a principal of the second degree are punishable alike, both being equally guilty, and the court may, in its discretion, try the principal in the second degree before the principal in the first degree. Nor is it material which one is alleged to have actually committed the felonious act, if it is duly proven that one committed the act and that the *638 other was present and aided and abetted the alleged felony... ." (Emphasis added.) 156 So. at 240.
That position was followed and affirmed in the subsequent case of State v. Peel, 111 So.2d 728 (Fla.App. 1959), in the following language at 732:
"If the accessory is indicted in the common-law mode the common-law rules control the trial of the accessory, and conviction of the principal is an essential prerequisite to the guilt of the accessory.
... If the accessory before the fact is indicted for the substantive offense, he may be convicted of the crime charged and his guilt or innocence is not dependent on or affected by that of the principal in the first degree. In such cases the substance of the issue is whether the person is guilty of the crime charged, whether as principal in the first degree or second degree, or as an accessory before the fact. And the fact that such person is indicted with another does not affect the issue on which such person is tried, since guilt is not dependent on the conviction of the other... ."
More recently the Supreme Court of Florida in Newman v. State, supra, said:
"We do not believe the failure to indict another or others along with the defendant or the failure to indict him singly as an aider or abettor is prejudicial to him or contrary to essential requirements of law. F.S. Section 776.011, F.S.A. was intended to obviate the necessity of indicting persons as aiders or abettors... ." 196 So.2d at 900.
Some of the cases cited by appellant appear to require a conviction of the original offender as a predicate to conviction of an aider and abettor. However, this is no longer the law. Those cases were limited to prosecution of accessories before the fact. The enactment of § 776.011 of the Florida Statutes eliminated this requirement, under the peculiar circumstances where it existed. The cases cited by appellant for this proposition predate the enactment of § 776.011 and therefore are not applicable. Appellant says this is contrary to logic. He points to the introduction into evidence in the lower court of a certified copy of the verdict of acquittal as conclusive proof that the alleged assault charged in the information did not in fact occur. The cases of Sons v. State, 99 So.2d 888 (Fla.App. 1958), cert. den. 357 U.S. 910, 78 S.Ct. 1157, 2 L.Ed.2d 1160; Chaudoin v. State, 118 So.2d 569 (Fla.App. 1960); DeLaine v. State, 230 So.2d 168 (Fla.App. 1970), cert. dis. 262 So.2d 655 (Fla. 1972); Jimenez v. State, 158 Fla. 719, 30 So.2d 292 (1947); and Newman v. State, supra, are cited for the proposition that before an aider and abettor can be convicted it must first be established that the original offense (the assault in this case) did in fact occur. This court has no quarrel with the cases cited by appellant's counsel. They accurately state the law, but alas, by the severance granted in this case the state was afforded two opportunities to prove the alleged assault. Although grossly in conflict, the evidence was substantial and competent on both points, i.e., that Sam Cagnina did in fact commit the offense charged and that appellant was an aider and abettor. The jury was at liberty to and did accept and rely upon that part of the evidence which it found to be worthy of belief and unfortunately for appellant, rejected that part it found to be unworthy of belief, all of which was within its province so to do. The jury, as finders of the fact, has resolved the evidentiary questions against the appellant. There does not now exist any valid reason for any further confusion on this point of law. Roby, supra, has absolutely laid those points to rest in the following language:
"Under our statute, therefore, a person is a principal in the first degree whether he actually commits the crime or merely aids, abets or procures its commission, and it is immaterial whether the indictment or information alleges that the defendant *639 committed the crime or was merely aiding or abetting in its commission, so long as the proof establishes that he was guilty of one of the acts denounced by the statute." 246 So.2d at 571.
It is contended that the lower court erred when it admitted evidence of the shooting incident which occurred on March 19, 1971, nearly three months prior to the crime charged in the information. Appellant's point VI asserts this violates the Williams Rule. Williams v. State, 110 So.2d 654 (Fla. 1959). The state's position is this incident was shown as proof on the issues of premeditation and the intent of the defendants, both essential elements of the crime. On oral argument before this court, it was contended by appellant that this issue became so prominent in the lower court, it amounted to a feature of the trial rather than an incident and therefore violated the rule announced by our sister courts in the cases of Green v. State, 228 So.2d 397 (Fla.App. 1969), and Denson v. State, 264 So.2d 442 (Fla.App. 1972). Incident to this point, it was further contended on oral argument by appellant that the bill of particulars required the state to prove the crime occurred between the hours of 6:00 A.M. and 10:00 A.M. on June 11, 1971, and that therefore unless the controversial evidence came in under the Williams Rule, it was not admissible. This court was, at that time, greatly concerned inasmuch as at first blush this procedure smacked of error. However, close examination of the record reveals counsel was mistaken about the contents of the bill of particulars. It does appear that the trial court gave the jury an instruction which limited the time within which they might find the crime occurred to between the hours of 6:00 A.M. and 10:00 A.M. on June 11, 1971. However, at no other place in the record  that is, either in the opening statements, the objections or the closing arguments  is any such time limitation thereto referred. Neither does the instruction follow the bill of particulars which was filed in the court below as no time limit was there imposed. This court is therefore certain that this instruction was inadvertently given by the learned judge of the lower court. We note that at a side bench conference immediately following the charge conference, the court announced that it had been agreed between counsel the court might give the instructions given in the Cagnina case. We apprehend this to be the source of the limiting instruction on the bill of particulars. However, we see no reason for the appellant to complain. Such an instruction could only have belatedly imposed a greater burden on the state and thereby favored the appellant. It further appears that so far as the quantum of evidence received by the lower court on the incident which occurred on March 19, 1971 is concerned, the same was grossly aggravated by appellant's liberal and extensive cross examination of the state's witnesses, which he had the absolute right and exercised his discretion to do. The court has substantial latitude in such evidentiary areas and no violation of the rule in Green and Denson, supra, appears.
Appellant complains in his point III that the lower court wrongfully denied his motion for a new trial because a juror did not respond to his satisfaction in answer to the following question: "Do any of you have friends, neighbors or relatives who are members of any law enforcement department?" The juror, Mrs. Crumley, made no response. On motion for a new trial, a member of the Seminole County Sheriff's Department, who was present in the courtroom during the trial, swore that he had known the juror for about forty years. The judge of the lower court also announced during those proceedings that he knew the juror. We suspect that lay persons may not regard the judge as a member of a "... law enforcement department." Needless to say, it was not established that the juror was either friend, *640 neighbor or relative of any law enforcement person as the question contemplated. So far as the record shows, she had no duty to respond to counsel's question.
Appellant complains that the lower court violated its own ruling upon motion in limine by permitting testimony regarding his background as a known gambler. The state contends that the court in essence reconsidered its ruling at the time the evidence was offered and that such ruling carries a presumption of correctness. We agree with this position. Carroll v. State, 186 So.2d 834 (Fla.App. 1966). It must also be noted that in extensive voir dire examination of the above-referred juror, Crumley, appellant's attorney asked her if she had any philosophical or religious scruples where gambling was concerned. There ensued several questions wherein appellant's counsel indicated that appellant might be revealed by the evidence as having a gambling background. This court also notes the witness, whose testimony was objected to, was on redirect examination, at this time, and the questions allowed, over counsel's objection, were rehabilitative in nature and therefore within the scope of redirect. Point VII is therefore without merit.
Failure to give proffered instructions to the jury on the issues of circumstantial evidence and intent were assigned as error by appellant's point VIII. The lower court gave the Florida Standard Jury Instructions for criminal cases covering circumstantial evidence, assault with intent to commit murder in the first degree and principals; both of the latter instructions made sufficient detailed and specific reference to the intent involved in an offense such as was charged in the information. This court has carefully studied the proffered instructions, and concludes that it was not error to refuse them.
The questions of delay in prosecution of appellant or failure to grant him a preliminary hearing are raised in points IV and V, respectively. Suffice it to say, the prosecution was commenced within the time required by § 932.465 of the Florida Statutes. State v. King, 282 So.2d 162 (Fla. 1973). So far as the appellant's right to a preliminary hearing is concerned, the case of Cameron v. State, 291 So.2d 222 (Fla.App. 1974), is the most recent enunciation of this court holding that no such right exists, at this time.
An order previously entered by this court has rendered appellant's point X moot. This order requires the inclusion of certain proceedings in the Cagnina trial with these appellate proceedings. However, we do not find such record to be helpful. Appellant's conviction and sentence must stand or fall on the record made in the lower court. To the extent that the proceedings in the Cagnina trial were of evidentiary value, the same were offered and received in the court below, including the verdict and judgment of acquittal of Cagnina.
The judgment and sentence does not reflect appellant was given credit for any time previously served. This was appellant's ninth point and it warrants our consideration. Appellant was in custody while the proceedings below were underway. Accordingly, he was entitled to credit for such time. F.S. 921.161(1) (1973). When the judgment and sentence is corrected to reflect such credit, no other error having been made to appear, the judgment and sentence of the lower court shall stand affirmed.
Affirmed in part; reversed in part, and remanded with directions.
OWEN, C.J., and WALDEN, J., concur.